UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALBERT M. WOODS,<br><br>               Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1]<br><br>               Defendant. | No. 12-cv-0398-JPH<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

      BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 13, 17.) Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Christopher J. Brackett represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 3.) After reviewing the administrative record and briefs filed by the parties, the court GRANTS defendant's Motion for Summary Judgment and DENIES plaintiff's Motion for Summary Judgment.

## JURISDICTION

      Plaintiff Albert M. Woods (plaintiff) protectively filed for supplemental security income (SSI) on August 17, 2009. (Tr. 46, 118.) Plaintiff initially alleged an onset date of January 21, 1979 but later amended the alleged onset date to the application date of August 17, 2009. (Tr. 46, 118.) Benefits were denied initially and on reconsideration. (Tr. 78, 87.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Caroline Siderius on November 4, 2010. (Tr. 41-69.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 44-63.) Vocational expert K. Diane Kramer also testified. (Tr. 63-68.) The ALJ denied benefits (Tr. 18-29) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 43 years old at the time of the hearing. (Tr. 44.) He went to school through the ninth grade. (Tr. 46.) He is working on his GED. (Tr. 46.) He is a landscaper by trade. (Tr. 44.) He has also done some logging. (Tr. 44.) He has a shoulder problem from overuse. (Tr. 47.) He had arthritis and bone spurs in his shoulder. (Tr. 47.) He has a number of surgeries on his right shoulder. (Tr. 47.) He has gone to physical therapy after each surgery but has never completed it. (Tr. 49-50.) He can use his arm and shoulder limitedly. (Tr. 53.) He testified he cannot lift, cannot carry things for very long, and it affects his whole arm and hand. (Tr. 53.) He has had two surgeries on his left knee but he has no real limitations because of the knee. (Tr. 54, 58.) He also has a wrist problem so he does not have full range of motion in his wrist. (Tr. 56.) He has a plate in his arm. (Tr. 56.) His arm and wrist problems cause him to drop things and make picking things up difficult. (Tr. 56-57.) He has problems with grip, strength and range of motion. (Tr. 57.) Plaintiff testified his doctor said he is manic depressive or bipolar, but he does not take medication. (Tr. 54-55.) He gets stressed out and very nervous. (Tr. 55.) He has a hard time being around people and dealing with things. (Tr. 55.) He spends most of his time sitting on the couch watching t.v. because he would rather not deal with people and because he cannot do much. (Tr. 58.) He has a difficult time remembering what he reads. (Tr. 61-62.) He has hearing aids but does not wear them because they need batteries. (Tr. 60-61.) He had hepatitis C but was successfully treated. (Tr. 62-63.) However, according to plaintiff, some of his mental health issues are at least partially attributable to the long-term effects of hepatitis C treatment. (Tr. 62-63.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570,

572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs

exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since July 13, 2009, the application date. (Tr. 20.) At step two, the ALJ found plaintiff has the following severe impairments: right shoulder injury, attention deficit hyperactivity disorder and depression. (Tr. 20.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 21.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). he can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk with normal breaks for up to six hours in an eight-hour workday. He can sit with normal breaks for up to six hours in an eight-hour workday. He can occasionally crawl and climb ladders, ropes or scaffolds. He is limited to occasional overhead reaching with the right dominant arm. The claimant is capable of doing simple and repetitive one-to three-step tasks with no detailed work with occasional contact with the public.

(Tr. 23.). At step four, the ALJ found plaintiff is unable to perform any past relevant work. (Tr. 27.) After considering plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (Tr. 27.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act since July 13, 2009, the date the application was filed. (Tr. 28.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ: (1) failed to properly consider plaintiff's shoulder impairment at step three; (2) erred in evaluating the medical and psychological opinion evidence. (ECF No. 14 at 8-15.) Defendant argues: (1) the ALJ properly determined plaintiff's shoulder condition does not meet a listing; and (2) the ALJ properly assessed plaintiff's residual functional capacity by considering the medical and psychological opinion evidence. (ECF No. 17 at 5-15.)

**DISCUSSION**

**1.    Step Three**

Plaintiff argues the ALJ's step three finding regarding plaintiff's shoulder condition is inadequate and he meets the listing for a musculoskeletal impairment.[2] (ECF No. 14 at 9-11.) If plaintiff meets the criteria for an impairment listed in 20 C.F.R. Pt. 404 App. 1 ("the listings"), he is presumed to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The listings include the "symptoms, signs and laboratory findings" that make up the characteristics of each listed impairment. 20 C.F.R. § 404.1525. To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. 20 C.F.R. § 404.1526. Plaintiff bears the burden of establishing she meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ concluded plaintiff's right shoulder symptoms fail to meet or medically equal the severity required for listing 1.02, major dysfunction of a joint. (Tr. 21.) Plaintiff argues the ALJ improperly evaluated the medical evidence and inadequately explained the step three finding. (ECF No. 14 at 9-11.) Plaintiff describes evidence of right shoulder surgeries and his testimony about limitations caused by his right shoulder condition. (ECF No. 14 at 9-11.) However, plaintiff fails to establish he meets all of the characteristics of listing 1.02. To meet listing 1.02, all of the following must be present:

- gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and
- chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and
- findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).
- With:
  A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
  B. Involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

Plaintiff asserts the ALJ erred in assessing his shoulder condition under listing 1.02B because plaintiff has two failed arthroscopic evaluations, weak grip in his right hand and his range of

---

[2] Plaintiff acknowledges the ALJ "did evaluate Mr. Woods' mental impairments quite thoroughly at step three." (ECF No. 14 at 9.)

motion is lacking, and because he testified that he had difficulties performing fine and gross manipulation movements effectively due to problems with his right hand and wrist. (ECF No. 14 at 11.) First, plaintiff fails to establish that the first requirements of listing 1.02 are met. Assuming for the sake of argument those elements are supported by the record, plaintiff cannot establish listing requirement 1.02B because it requires findings regarding a joint in "each upper extremity." The inability to perform fine and gross movements effectively is defined as "an extreme loss of function of *both* upper extremities." 20 C.F.R. Pt. 404 App. 1, 1.00B(2)(c) (emphasis added). The evidence (and plaintiff's argument) only establishes problems with plaintiff's right upper extremity, not in "each upper extremity" or "both upper extremities." For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Thus, the evidence does not establish plaintiff meets listing 1.02 because only one upper extremity is affected by plaintiff's shoulder condition.

Further, the listing includes examples of the inability to perform fine and gross movements effectively, including the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level. 20 C.F.R. Pt. 404 App. 1, 1.00B(2)(c). The evidence does not establish plaintiff experiences such significant limitations. Plaintiff reported the ability to feed and wash himself (Tr. 137), prepare food (Tr. 132, 163), make coffee (Tr. 161, 226), provide food and water for a pet (Tr. 161), dress himself (Tr. 162), take care of personal hygiene (Tr. 226), and do dishes, laundry, cooking, cleaning and grocery shopping (Tr. 226). Plaintiff is able to live alone and take care of himself despite his shoulder condition. Thus, while the evidence establishes some limitations due to plaintiff's right shoulder injury, the evidence does not establish that plaintiff's shoulder condition resulted in an inability to perform fine and gross motor movements effectively. The ALJ properly concluded there is no evidence of involvement of one major peripheral joint in each upper extremity resulting in an inability to perform fine and gross motor movements. (Tr. 21.) As a result, the ALJ did not err at step three.

**2.     Opinion Evidence**

   **a.  Dr. Boone**

Plaintiff argues the ALJ did not properly consider or reject the opinion of Dr. Boone, a treating physician. (ECF No. 14 at 11-12.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

Dr. Boone completed DSHS Physical Evaluation forms in January 2008 and December 2009. (Tr. 292-99.) In 2008, Dr. Boone diagnosed osteoarthritis of the right shoulder and left knee and assessed a marked limitation in all work activities ("very significant interference with the ability to perform one or more work-related activities") due to plaintiff's shoulder and a severe limitation in all work activities ("inability to perform one or more basic work-related activities") due to plaintiff's knee problem. (Tr. 294.) In 2009, Dr. Boone diagnosed osteoarthritis of the right shoulder and left knee and indicated both conditions caused a marked limitation in all work activities. (Tr. 298.) In 2008 and 2009, Dr. Boone opined plaintiff was limited to sedentary work. (Tr. 294, 298.)

The ALJ gave little weight to Dr. Boone's opinions for two reasons. (Tr. 26.) First, the ALJ pointed out Dr. Boone's opinions are unsupported by objective findings. (Tr. 26.) A medical opinion may be rejected if it is unsupported by medical findings. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). Dr. Boone's office visit notes are very limited. (Tr. 263-78.) There is only one mention of "shoulder strain" with no specific findings, exam results or limitations mentioned. (Tr. 274.) The ALJ reasonably concluded the objective findings do not support Dr. Boone's conclusions.

The second reason mentioned by the ALJ in rejecting Dr. Boone's opinion is that his opinions are inconsistent with plaintiff's own allegations. (Tr. 26.) An ALJ may discount a physician's opinion when a claimant's own statements about his conflict with the medical opinion. *See Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir. 1999); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ pointed out plaintiff told Dr. Everhart in September 2009 that he had only intermittent and somewhat improved right shoulder symptoms and he denied any other physical problems, yet a few months later Dr. Boone found plaintiff to be very limited due to his shoulder and knee problems. (Tr. 26, 223-24.) The ALJ reasonably resolved the conflict between Dr. Boone's opinion and plaintiff's statements. This is therefore a specific, legitimate reason for rejecting Dr. Boone's opinion.

Plaintiff argues the ALJ's reasons for rejecting Dr. Boone's opinion are "boilerplate" and are not sufficiently specific. (ECF No. 14 at 12.) It is insufficient for the ALJ to reject the opinion of a treating or examining physician by merely stating, without more, that there is a lack of objective medical findings in the record to support or that it is inconsistent with other evidence in the record. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). However, the ALJ described at least one example of evidence inconsistent with Dr. Boone's findings and thoroughly discussed the medical evidence conflicting with Dr. Boone's findings. (Tr. 26.) As a result, the ALJ's findings are sufficiently specific.

Plaintiff also argues the ALJ improperly relied on the opinion of a reviewing non-physician. (ECF No. 14 at 11.) Nga P. Truong completed a Physical Residual Functional Capacity Assessment form on November 25, 2009. (Tr. 250-57.) Plaintiff argues the ALJ

improperly adopted those limitations even though Nga Truong is a not a medical doctor. (ECF No. 14 at 11.) However, plaintiff overlooks the findings of Dr. Staley, a reviewing physician, who considered the same evidence (as well as additional evidence) and affirmed the RFC prepared by Nga Truong. (Tr. 301.) The ALJ considered both opinions and gave substantial weight to them. (Tr. 27.) Even if Nga Truong's lay opinion was improperly weighed or considered, Dr. Staley's opinion is equivalent and supports the ALJ's RFC finding. Thus, there is no error in considering Nga Truong's opinion. Plaintiff further argues the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). The ALJ did not justify rejection of Dr. Boone's opinion by citing Dr. Staley's opinion. Instead, the ALJ cited specific, legitimate reasons supported by substantial evidence in the record for rejecting Dr. Boone's opinion which are independent of Dr. Staley's opinion. However, Dr. Staley's opinion is consistent with the ALJ's findings and with other evidence cited by the ALJ throughout the decision, including the records of plaintiff's treating specialist, Dr. Pontecorvo. (Tr. 20-26.) As a result, the ALJ did not err in rejecting Dr. Boone's opinion or crediting Dr. Staley's opinion.

### b. Dr. Beaty

Plaintiff argues the ALJ erred by failing to include all of the limitations identified by Dr. Bailey and credited by the ALJ in the RFC and hypothetical to the vocational expert. (ECF No. 14 at 13-14.) Plaintiff argues that although the ALJ credited Dr. Beaty's opinion, "The ALJ's hypothetical question to the vocational expert did not include even a narrative of limitation as given by Dr. Beaty." (ECF No. 14 at 14.) The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The ALJ's hypothetical to the vocational expert (and the RFC) includes these mental limitations: "They'd be capable of doing simple and repetitive one to three-step tasks with no detailed work with occasional contact with the public." (Tr. 66.) The issue is whether the RFC and hypothetical are supported by substantial evidence in the record.

The ALJ credited all of the psychological opinion evidence in the record which includes the opinions of Dr. Ashworth, Dr. Everhart, and Dr. Beaty. Dr. Beaty's findings are based on a review of the record, including Dr. Ashworth's findings and Dr. Everhart's findings.

Dr. Ashworth completed a DSHS Psychological/Psychiatric Evaluation form in March 2008. (Tr. 192-95.) He assessed four moderate limitations and three mild limitations. (Tr. 194.) He assessed no limitation in the ability to understand, remember and follow simple (one or two step) tasks and a mild limitation in the ability to understand, remember and follow complex (more than two step) directions. (Tr. 194.) He also found plaintiff had no limitation in the ability to perform routine tasks. (Tr. 194.) This is a reasonable basis for the ALJ's finding that plaintiff can perform simple and repetitive one- to three-step tasks. (Tr. 66.) Dr. Ashworth also found plaintiff's ability to interact with the public is mildly limited. (Tr. 194.) This is consistent with the ALJ's finding that plaintiff can have occasional contact with the public. (Tr. 66.) Thus, the ALJ's findings are properly supported by substantial evidence.

Dr. Everhart completed a narrative psychological evaluation in September 2009. (Tr. 223-28.) She observed plaintiff had difficulty seeing some of the testing and her test results were to be interpreted with caution. (Tr. 227.) However, she reported plaintiff needs no help with his activities of daily living. (Tr. 227.) She found plaintiff has the ability to listen, understand and remember simple directions, consistent with the ALJ's findings. (Tr. 227.) She also found he would have "much difficulty" working with the public. (Tr. 228.) This finding is also consistent with the ALJ's determination that plaintiff should be limited occasional contact with the public. (Tr. 228.) Thus, the limitations identified by the ALJ are supported by substantial evidence.

Dr. Beaty completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment forms in November 2009. (Tr. 232-49.) Dr. Beaty identified six moderate limitations and prepared a narrative residual functional capacity assessment. (Tr. 232-34.) He concluded plaintiff is capable of non-complex, one- and two-step repetitive tasks working at a moderate pace. (Tr. 234.) Additionally, Dr. Beaty opined plaintiff "Does best working relatively alone; doesn't like bossy supervisors. Capable of basic work-related social interactions with supervisors and co-workers." (Tr. 234.) These limitations are all consistent with the findings of Dr. Everhart and Dr. Ashworth. Although the ALJ did not include "doesn't like bossy supervisors" in the hypothetical, this is not error because plaintiff's dislike for bossy supervisors is not a functional limitation. *See Carmickle,* 533 F.3d at 1165. Plaintiff fails to point out any

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

particular limitation in Dr. Beaty's opinion that is not accounted for in the RFC and hypothetical. Even if there is some conflicting evidence, the question is whether the restrictions included in the hypothetical are supported by substantial evidence evidence. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986). While the ALJ did not quote Dr. Beaty's findings verbatim, the hypothetical took into account all of the limitations supported by the evidence. The hypothetical and RFC are based on substantial evidence in the record and the ALJ did not err.

Plaintiff also argues the ALJ should have based his findings on the vocational expert's response to the hypothetical posed by plaintiff's counsel. (ECF No. 14 at 14.) Plaintiff's counsel read the vocational expert limitations marked by Dr. Beaty on a check-mark form and the vocational expert testified competitive work would be eliminated. (Tr. 67-68, 232-33.) However, the ALJ is not bound to accept restrictions in a hypothetical posed by claimant's counsel. *Magallenes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). Second, individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). Third, the check-box portion of the form completed by Dr. Beaty is his "Summary Conclusions," not a residual functional capacity assessment. (Tr. 232.) The residual functional capacity assessment is the narrative statement correlating to and explaining the summary conclusions. (Tr. 234.) As a result, the ALJ did not err by failing to consider the vocational expert's testimony about the form limitations checked by Dr. Beaty.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(ECF No. 17)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is **DENIED**.

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED December 27, 2013

         S/ JAMES P. HUTTON
        UNITED STATES MAGISTRATE JUDGE